Rand v. AJ's Sunoco, No. 438-6-09 Wncv (Crawford, J., Jan. 28, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
COUNTY OF WASHINGTON

ELIZABETH and KEITH
RAND,
Plaintiff-Appellees

v.

WASHINGTON SUPERIOR COURT
DOCKET NO.: 438-6-09 Wncv

AJ's SUNOCO,
Defendant-Appellant

DECISION ON SMALL CLAIMS APPEAL

This is a small claims appeal concerning a dispute over the repair of an automobile.

FACTS

The evidence before the small claims judge established the following:

On October 20, 2008, the "check engine" light came on in plaintiffs' 2002 Hyundai Santa Fe automobile. Plaintiff Elizabeth Rand drove the car to AJ's Sunoco on October 21 where Armand Jalbert, the owner of the service station, ran a diagnostic program. He advised Ms. Rand that the car needed a tune up including ignition coils (2), spark plugs and wires. Ms. Rand made an appointment for November 1. In the interim, she continued to drive the car. There was evidence that the car was not running right between October 20 and November 1. It is undisputed that it would start and could be driven without incident.

On November 1, Ms. Rand dropped her car off at the Sunoco station. The car remained at AJ's until November 8 when the Rands had it towed to the Midstate Hyundai, the local dealership. What happened to the car while it was at the Sunoco station is the subject of this controversy.

The mechanics at the Sunoco station replaced the two ignition coils with aftermarket coils. They also replaced the spark plugs, the fail safe sensor which prevents electrical overload, and spark plugs and wires. The station charged $558.04 for this work. After all this work was performed, the car would not start at all. During its time at the Sunoco station, the car deteriorated from running (with the "check engine" light on) to completely dead.

When the car arrived at the dealership, the Hyundai technician found that one of the two newly installed ignition coils was completely burned out. In addition, the ECU (the engine computer) and the newly installed "fail safe" sensor were destroyed. These

elements were replaced at a cost of $3,278 (including labor and a minor unrelated charge for an oil change).

The Hyundai technician was unable to identify the exact cause of the deterioration of the car while it was at the Sunoco station. There were several possibilities. One was that the aftermarket ignition coils were defective or not appropriate. The Hyundai dealership replaced these with original equipment parts. Another possibility was that the Sunoco representatives had by-passed the "fail safe sensor" and overloaded the ignition system with high voltage current.

Armand Jalbert, owner of the Sunoco station, was absent on a trip out of state during most of the time the car was in his shop. He testified that his technicians did nothing wrong and that he believed whatever was wrong with the car when it came into the shop was responsible for burning out the coils (including the new coil his crew installed), the computer, and the fail safe sensor.

The small claims judge ruled that since the car entered the Sunoco station in driveable condition and left in much worse condition, "something happened" at the Sunoco station which damaged the vehicle. He entered judgment for $2,000 (plus costs) which was his calculation of a reasonable cost to replace the three elements of the ignition system which were burned out.

## Appellant's Claims

Appellant claims that the small claims judgment is *procedurally* defective because the station did not receive the same opportunity as the plaintiff to call additional witnesses. Appellant claims that the small claims judgment is *substantively* defective because the evidence is inadequate to support a finding that the Sunoco station caused the damage which was subsequently repaired by the Hyundai dealership.

## ANALYSIS

1. The procedural issue

The small claims judge held two hearings. The second was scheduled in order to give the plaintiffs (who had arrived alone at the first hearing) an opportunity to bring a witness from the Hyundai dealership. They did this. On behalf of the Sunoco station, Mr. Jalbert participated fully in both hearings. He testified freely, and he introduced hearsay evidence of the opinion of another mechanic. Both sides had a full opportunity to offer all the evidence available to them.

In a related vein, the appellant contends that the judge made up his mind before Mr. Jalbert had completed his case. The tape-recorded record shows that at the end of the second hearing, Mr. Jalbert interrupted the judge's findings to ask to introduce documents. The judge courteously allowed this. He asked to call a witness on the telephone. This was not allowed. There is a long pause on the tape while the judge

2

reviewed the additional evidence. The judge then returned to stating his findings. Mr. Jalbert had a fair opportunity to introduce evidence and to testify at both hearings.

II. Adequacy of the Evidence

The standard of review is whether the testimony and exhibits, considered in the light most favorable to the prevailing party (the Rands), is sufficient as a matter of law to support the findings.

In this case, the evidence fairly supports a determination that the automobile was damaged while it was in the hands of the Sunoco station. It arrived as a driveable auto; it left behind a tow-truck. On examination, three elements of the ignition system had been destroyed, including a new ignition coil and a new "fail safe sensor" which had been replaced at the Sunoco station.

What is unknown is whether this damage was caused by a defective coil sold to the Rands by the Sunoco station or by some action of the Sunoco technicians while trying to start the car. Either event would be sufficient for a finding of liability. If the defective coil caused the damage, the station is strictly liable for resulting property damage as the seller of the product. The general rule is that a repairer will be strictly liable when the repair includes the sale and installation of a defective product. *Lemley v. J & B Tire Co.*, 426 F.Supp. 1378, 1380 (W.D.Pa. 1977). If, instead, the damage occurred due to the actions of the station's mechanics in by-passing the "fail safe sensor" and running electricity through the ignition system at too high a voltage, then the station is liable on a theory of negligence.

The court concludes that the evidence, considered in the light most favorable to the prevailing party, is sufficient to support the small claims judge's ruling that the Sunoco station is responsible for the replacement of the three elements of the ignition system which were found to be irreparably damaged during the time the car spent at the station.

CONCLUSION

The decision of the small claims judge is AFFIRMED.

Dated: 1/28/10

_____
Geoffrey Crawford,
Superior Court Judge

3